IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BOBBY JOE MOTTON, SR., | ) | 4:07CV3090 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| LANCASTER COUNTY | ) | |
| CORRECTIONS, MEDICAL | ) | |
| STAFF, and DIRECTOR, | ) | |
| M. THURBER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' motion for summary judgment (filing 22).[1] The plaintiff has not responded to the motion.[2] Upon careful

---

[1] On initial review of the plaintiff's complaint, I determined that the first two named defendants are not legal entities that are capable of being sued, and that the third named defendant, "Director, M. Thurber," is sued only in his official capacity as Director of Lancaster County Corrections. "In other words, the action is brought against Lancaster County." (Filing 15, at CM/ECF p. 3.)

[2] Subsequent to the filing of the motion, the plaintiff sent a letter to the clerk of the court with certain enclosures that the plaintiff stated he would like to submit as evidence in support of his claims. The clerk filed these materials and docketed the same as a supplement to the plaintiff's complaint (filing 25). While this filing may be considered as a supplemental pleading, the evidentiary materials have not been properly authenticated and cannot be considered to create a genuine issue of material fact. *See* NECivR 7. 1(b)(2)(C) ("Any documents filed [as evidence in opposing a motion for summary judgment] must be identified and authenticated by affidavit. The affidavit must be made on personal knowledge, set forth such facts as would be admissible in evidence, [and] show affirmatively that the affiant is competent to testify to the matters stated therein[.]"); *Stuart v. General Motors Corp.*, 217 F.3d 621, 636 n. 20 (8th Cir. 2000) ("To be considered on summary judgment, documents

review of the pleadings and affidavits on file, I find that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

The plaintiff, Bobby Joe Motton, Sr., alleges that while confined in the Lancaster County jail, he was denied medication for his diabetes and high blood pressure, as a result of which he suffered a diabetic attack and had swollen ankles that prevented him from walking. I noted on initial review of the plaintiff's complaint that he appears to be alleging a claim for damages under 42 U.S.C. § 1983 for deliberate indifference to an inmate's serious medical needs in violation of either the Eighth Amendment (if the plaintiff was serving a jail sentence) or the Due Process Clause of the Fourteenth Amendment (if the plaintiff was a pretrial detainee). Pursuant to Rule 56(c) and our local rules,[3] I now find that there is no dispute concerning the truthfulness of the following facts, as set forth in the defendants' brief:

> 1. The plaintiff, Bobby Joe Motton, Sr., was in the custody of the Lancaster County Corrections Department in Lincoln, Nebraska, from March 6, 2006, to April 20, 2007, but is not presently in the

---

must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of [Rule 56(e) ]. Documents which do not meet those requirements cannot be considered.").

[3] Our local rules require a party moving for summary judgment to set forth in a supporting brief "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). Lancaster County has complied with this requirement and has properly referenced its statement of facts to the record. Our local rules also require the party opposing a motion for summary judgment to respond to the movant's statement of facts, and provide that "[p]roperly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1(b)(1) (emphasis in original). As noted above, Motton has made no response to the summary judgment motion.

custody of the Lancaster County Corrections Department, and has not been in the Department's custody since April 20, 2007. During said period, Motton was incarcerated at the Platte County Jail from July 17, 2006, through August 31, 2006, pursuant to an interlocal agreement between Lancaster County and Platte County for detention services.

     2.    At all times pertinent hereto defendant Michael Thurber was the Director of the Lancaster County Corrections Department (Department). In that capacity he was responsible for overall supervision of the Department and all of the facilities operated by it, including the Intake and Detention Center (IDF) (commonly known as the "jail"), and the Lancaster Correctional Facility (LCF). His duties as Corrections Director included making final determinations regarding institutional grievances filed by inmates of the jail and LCF.

     3.    At all times pertinent hereto the Lancaster County Corrections Department included the Intake and Detention Facility located at 601 South 10th Street, Lincoln, Nebraska, 68508, and the Lancaster Correctional Facility, located at 4420 NW 41st Street, Lincoln, Nebraska, 68254. The Intake and Detention Facility is a maximum security facility; whereas, the Lancaster Correctional Facility is a minimum security facility.

     4.    At all times pertinent hereto the staff that provided medical services to inmates at the jail consisted of two contract physicians, five nurses who were full-time employees of the Department, and several nurses contracted through private medical staffing firms, who collectively worked approximately forty hours per week. When necessary, inmates were also referred to physicians and/or facilities outside the jail to receive medical services that could not be provided at the jail.

     5.    At all times pertinent hereto one of the two contracting physicians was physically present at the jail two mornings each week to conduct "sick call." At sick call the physician examined and/or treated inmates who had been scheduled for medical attention. At that time the physician also reviewed files and discussed with nurses, treatment for

other inmates who did not require direct contact with a physician. In addition, one of the physicians was "on call" at all times for consultation with jail staff regarding medical issues.

6. At all times pertinent hereto one or more nurses were scheduled to be on duty at the jail from 6:30 a.m. to 11:00 p.m. each day, to provide direct medical services to inmates. In addition, at least one nurse was "on call" at all times to consult with jail staff regarding medical issues.

7. At all times pertinent hereto the provision of medical services to inmates at the jail and LCF was governed by departmental policies and procedures, and the provisions of the agreement between the County and the contracting physicians. Generally, in non-emergency situations, inmates who wished to receive medical services were required to submit a request form, commonly referred to as a "kite." Those forms were routed to the nurses, who were responsible for screening them and taking appropriate action. Whenever possible, the nurses themselves addressed the problems raised in the kites. To facilitate that option, the physicians issued a set of standing orders that were incorporated into departmental policy, and that directed specific action by the nurses in response to the most common routine medical problems encountered by inmates. If they were unable to resolve the problem themselves, the nurses either consulted with the physician by phone, or scheduled time at the next sick call to discuss the problem with the physician, or simply scheduled the inmate to see the physician at the next sick call.

8. At all times pertinent hereto inmates housed at LCF were given the opportunity to be seen by the physician at the jail by requesting to do so in writing. On or about October 26, 2006, the Department implemented "nursing sick call" at LCF whereby one nurse was scheduled to be on duty at LCF in the evenings for approximately 2 hours, Monday through Friday.

9. At all times pertinent hereto the administration of medications to inmates at the jail and LCF was governed by

4

departmental policies and procedures, including Policy 12.10 and Policy 12.1, Standing Order "Discontinuation or 'DWO' and Palming of Medications", the Lancaster County Corrections Department Inmate Handbook, Intake and Detention Facility, and the Lancaster County Corrections Department LCF Handbook, Lancaster Corrections Facility.

10. At all times pertinent hereto the jail's nursing staff administered the medication pass at the jail delivering medications to those inmates who reported to the medication line at the times designated by medical staff.

11. At all times pertinent hereto inmates at LCF were responsible for going to the Control Center to receive their medications at the appropriate times.

12. On March 7, 2006, Motton was assessed by the jail's nursing staff upon intake and denied any problems with diabetes and high blood pressure.

13. On March 8, 2006, Motton was again assessed by the jail's nursing staff and started on accu-checks to monitor his blood sugar levels and also placed on a diabetic diet.

14. On March 10, 2006, Motton was assessed by Dr. Masek and started on diabetic medication (Glipizide) two times a day for his high blood sugars, and was also started on blood pressure medication (Lisinopril) daily for his elevated blood pressure.

15. On May 21, 2006, Motton missed one dose of his diabetic medication because he failed to report to the control center for the evening medication pass.

16. On May 21, 2006, Motton filed an institutional grievance (LG06-15) alleging that jail staff refused to give him his 5:00 p.m. diabetic medication on May 21, 2006. Motton further alleged in his grievance that jail staff refused to give him his 5:00 p.m. diabetic medication on May 2, 2006, and May 16, 2006; however, he alleged he

received his diabetic medication on May 2, 2006, at 7:30 p.m, and on May 16, 2006, at 7:15 p.m. That grievance was investigated by Corrections Specialist Steve Foree, and on June 12, 2006, Corrections Director Michael Thurber remedied the grievance.

17. On May 31, 2006, Motton did not receive his 5:00 a.m. diabetic medication because the Department was out of his prescribed medication.

18. On June 1, 2006, at approximately 10:19 p.m., Motton was transported from LCF to the jail for medical observation due to high blood pressure concerns. Upon arrival at the jail, the jail's nursing staff placed Motton on 30-minute watch intervals for elevated blood pressure, with instructions to monitor Motton's blood pressure every 4 hours, give him Tylenol as needed, refrain from Sudafed or over the counter medicine without nurse approval, and call the nurse when his blood pressure medicine arrived, or if his blood pressure was 200/110 or above.

19. On June 2, 2006, at approximately 7:05 a.m., Motton was again assessed by the jail's nursing staff for hypertension (HTN). Motton's only complaint to the jail's nursing staff on the morning of June 2, 2006, was that he was hot. In fact, he asked if he could go back to work and was later released from medication observation and returned to LCF. Motton's blood sugar levels on May 31, 2006, June 1, 2006, and June 2, 2006, were determined to be within acceptable ranges.

20. On June 5, 2006, Motton filed an institutional grievance (LG06-17) alleging that he did not receive his 5:00 a.m. diabetic medication on May 31, 2006, and as a result of missing said medication, he suffered a diabetic attack. Motton further alleged in his grievance that he was taken to the Intake Center holding area on June 1, 2006, due to complications from missing his diabetic medication, but he was not examined by a nurse until the morning of June 2, 2006. Motton further alleged in his grievance that he did not receive his 5:00 p.m. diabetic medication on June 2, 2006, and that medical staff did not order his diabetic medication for most of the month of May. That grievance was

6

investigated by Corrections Specialist Steve Foree, and on July 31, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

21. On or about June 5, 2006, Thurber received a letter from the American Civil Liberties Union (ACLU) Nebraska Foundation relating to Motton's allegation that the Corrections Department failed to give him his diabetes medication on a number of occasions. Thurber forwarded the letter to Facility Administrator Terry Weber, who in turn had Correction Lieutenant Brad Johnson investigate the allegations in the letter and respond to the ACLU. Lt. Johnson contacted a representative from the ACLU on or about July 3, 2006, regarding Motton's allegation.

22. On June 15, 2006, Motton did not receive his 5:00 a.m. diabetic medication because the Department was out of his prescribed medication.

23. On June 15, 2006, Motton filed an institutional grievance (LG06-20) alleging that he did not receive his 5:00 a.m. diabetic medication on June 15, 2006. That grievance was investigated by Correctional Specialist Steve Foree, and on July 13, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

24. On June 25, 2006, Motton filed an institutional grievance (LG06-21) alleging that Corrections Director Michael Thurber failed to do a complete investigation on a previous unspecified grievance. That grievance was investigated by Correctional Specialist Steve Foree, and on July 13, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

25. On July 8, 2006, Motton did not receive his 5:00 a.m. diabetic medication because the Department failed to set up a medication envelope for Motton.

7

26. On July 9, 2006, Motton filed an institutional grievance (JG06-87) alleging that medical staff gave him the wrong medication on July 7, 2006, and also failed to provide his 5:00 a.m. diabetic medication on July 8, 2006. That grievance was investigated by Correctional Specialist Steve Foree, and on July 18, 2007, Corrections Director Michael Thurber remedied the grievance.

27. On July 14, 2006, Motton filed an institutional grievance (JG06-90) alleging that he had not received proper medical care because he did not get medications for a cold and was taken off the doctor's call for July 10, 2006. That grievance was investigated by Correctional Specialist Steve Foree, and on September 6, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

28. On July 14, 2006, Motton filed an institutional grievance (JG06-89) alleging that on July 7, 2006, after he was returned to the Intake Center from LCF, jail staff failed to send his diabetic medication with him. Motton further alleged that nurses at the Intake Center gave him someone else's medication on the morning of July 7, 2006, and that he failed to receive his diabetic medication on the morning of July 8, 2006. Motton further alleged that from July 9, 2006, through July 14, 2006, nursing staff gave him someone else's medication. That grievance was investigated by Correctional Specialist Steve Foree, and on July 31, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

29. On August 1, 2006, Motton filed an institutional grievance (JG06-92) alleging that Corrections Director Michael Thurber had skipped over a grievance Motton had filed regarding an alleged diabetic attack. That grievance was investigated by Correctional Specialist Steve Foree, and on August 10, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

30. On August 2, 2006, Motton filed an institutional grievance (JG06-94) alleging that jail staff and Corrections Director Michael Thurber did not forward his inmate request forms to the District Court and as a result, the Court denied his request to go to his mother's funeral. Motton further alleged that Corrections Director did not do a complete investigation of Motton's complaint about having a diabetic attack. That grievance was investigated by Correctional Specialist Steve Foree, and on September 6, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

31. On August 31, 2006, Motton did not receive his evening dose of blood pressure medication because he was returned to LCF from Platte County Jail too late to dispense his medication.

32. On September 2, 2006, Motton was assessed by the jail's nursing staff for a complaint of swollen feet. Motton was given Tylenol for his pain; however, nursing staff determined the swelling was not serious enough for additional treatment. Motton was instructed to file a "kite" if the swelling continued, but Motton never did so.

33. On September 9, 2006, Motton filed an institutional grievance (JG06-108) alleging that he did not receive his blood pressure medications on the evening of August 31, 2006. Motton further alleged that he received his blood pressure medication late on the morning of September 1, 2006. Motton further alleged that his feet swelled due to the lack of blood pressure medication. That grievance was investigated by Correctional Specialist Steve Foree, and on October 9, 2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

34. On October 4, 2006, Motton filed an institutional grievance (JG06-118) alleging that medical staff failed to provide him with his blood pressure medication on September 28, 2006. Motton further alleged that the alleged missed medication caused him to become ill during the night of September 28, 2006. That grievance was investigated by Correctional Specialist Steve Foree, and on October 31,

9

2006, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

35. On December 3, 2006, Motton did not receive his 5:00 a.m. blood pressure medication because he declined his morning medication.

36. On December 5, 2006, Motton filed an institutional grievance (JG06-159) alleging that he did not receive his diabetic or blood pressure medications on the morning of December 3, 2006. That grievance was investigated by Correctional Specialist Steve Foree, and on February 1, 2007, Corrections Director Michael Thurber adopted the recommendation of Program Director Brenda Fisher and denied the grievance.

37. On January 14, 2007, Motton did not receive his 5:00 p.m. diabetic medication because the Department was out of his prescribed medication.

38. On January 17, 2007, Motton filed an institutional grievance (JG07-8) alleging that he did not receive his 5:00 p.m. diabetic medication on January 13, 2007, because medical staff ran out of the medication. That grievance was investigated by Correctional Specialist Steve Foree, and on February 1, 2007, Corrections Director Michael Thurber remedied the grievance.

39. Thurber ultimately denied several of the above-mentioned grievances wherein Motton did not receive his medication due to the Department's failure to have said medication available; specifically Grievance LG06-17, Grievance LG06-20, and Grievance LG06-108. The primary factor in the decision to deny the grievances was the fact that they involved the exercise of medical judgment regarding the administration of medication for Motton's conditions. Thurber relied on the expertise of the jail's nursing staff to respond to Motton's grievances. In all instances where Motton missed his medication, the investigation of Motton's grievances revealed evidence that his diabetes

> and blood pressure were not affected by said missed medications, and he was not harmed or placed in a life-threatening situation.

(Filing 23, at CM/ECF pp. 1-12 (citations to record omitted).)[4]

To prevail on a claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that jail officials actually knew of but deliberately disregarded those needs. *See Roe v. Crawford*, 514 F.3d 789, 798 (8th Cir. 2008). "For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.* (citing *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003)). "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). The knowing failure to administer prescribed medicine can constitute deliberate indifference. *See Phillips v. Jasper County Jail*, 437 F.3d 791, 796 (8th Cir. 2006). However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.

---

[4] Lancaster County states in a fortieth paragraph that "Motton has not alleged that his claimed constitutional injury was the result of any County custom or policy." (Filing 23, at CM/ECF p. 12.) As I previously determined on initial review, however, an actionable claim is stated against the County, when the complaint is liberally construed, because Motton "alleges that he failed to receive his medications on multiple occasions over a period of several months, despite his repeated complaints to the jail administration." (Filing 15, at CM/ECF p. 4.)

1997) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled on other grounds by* *Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002)). *See also* *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (any failure by prison officials to ensure that bipolar prisoner's medications were promptly transferred with him to solitary confinement did not constitute deliberate indifference to his serious medical needs in violation of Eighth Amendment, absent showing by prisoner that he suffered harm as result).

While the evidence establishes that Motton failed to receive his prescribed medications on several occasions, there is no evidence that these instances were anything other than inadvertent, and no medical evidence that Motton suffered any detrimental effects as a result of the missed or delayed dosages. Because there is not sufficient evidence to support a constitutional claim of deliberate indifference,

IT IS ORDERED that the defendants' motion for summary judgment (filing 22) is granted, and the plaintiff's action is dismissed with prejudice. Judgment shall be entered by separate document.

July 21, 2008.                    BY THE COURT:

                                  s/ *Richard G. Kopf*
                                  United States District Judge